# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

O

Case No. SACV 11-0425 DOC (MLGx)                              Date: May 23, 2011

Title: TIMOTHY SLAPPY v. ROBERT HARRIS, ET AL

PRESENT:

                 THE HONORABLE DAVID O. CARTER, JUDGE

| Julie Barrera | Not Present |
|---|---|
| Courtroom Clerk | Court Reporter |

ATTORNEYS PRESENT FOR PLAINTIFFS: ATTORNEYS PRESENT FOR DEFENDANTS:

NONE PRESENT                              NONE PRESENT

PROCEEDING (IN CHAMBERS): ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT CITY OF COSTA MESA'S MOTION TO DISMISS PLAINTIFF'S SECOND, THIRD, FOURTH, AND FIFTH CLAIMS FOR RELIEF

       Before the Court is Defendant the City of Costa Mesa ("Defendant" or the "City")'s Motion to Dismiss Plaintiff Timothy Slappy ("Plaintiff")'s Second Third, Fourth, and Fifth Claims for Relief (Docket 4). The Court finds this matter appropriate for decision without oral arguments. Fed.R.Civ. P. 78; Local Rule 7-15. After reviewing the moving, opposing, and replying papers the Court hereby GRANTS IN PART AND DENIES IN PART the Motion.

       **I.**       **Background**

       Plaintiff's Complaint alleges that on March 21, 2009 at 1:00 am Defendant Robert Harris ("Harris") and another officer from the City of Costa Mesa Police Department approached Plaintiff and his friend and began to question them outside of Plaintiff's residence. Complaint, ¶¶ 10-12. Harris asked whether Plaintiff was on probation, and Plaintiff informed him that he was on informal probation for cocaine possession. *Id.* at ¶ 13. Harris allegedly demanded to know if Plaintiff had any drugs or weapons, which Plaintiff indicated he did not, and Harris then searched Plaintiff and found no drugs or weapons. *Id.* at ¶ 14. According to Plaintiff, Harris then ordered Plaintiff to sit on the curb, and shined his flashlight onto the curb towards a white substance. Harris then asked about the substance, and said it looked like rock cocaine. *Id.* at ¶ 15. He subsequently tested the substance. *Id.* at ¶ 17. Plaintiff alleges that Harris planted the drugs.

Plaintiff avers that, after informing Plaintiff that he was "unlike any cop [he] had ever encountered before," and threatening him with additional charges, Harris arrested Plaintiff and ultimately transported him to the Orange County Jail, from which he was released on bail the next day. *Id.* at ¶¶ 17-21. According to Plaintiff, he returned to the Costa Mesa Police Department, where he spoke to the watch commander about filing a complaint against Harris. *Id.* at ¶ 22. The commander gave him a form to complete and told Plaintiff to speak to Internal Affairs. *Id.* Plaintiff avers that his concerns about being racially profiled and his distrust of the police following his encounter with Harris prevented him from following up with Internal Affairs. *Id.*

On May 4, 2009, Plaintiff pled guilty at his arraignment, which he alleges he did out of distress based on the District Attorney's strenuous arguments. *Id.* at ¶¶ 23-25. Following the completion of his sentence, Plaintiff was subpoenaed in the spring of 2010 to appear at a hearing concerning 27 citizen complaints against Harris. *Id.* at ¶¶ 26-27. Two detectives from the Costa Mesa Police Department approached Plaintiff, apologized for Harris's actions, and told him that Harris had been fired. Later that day, Plaintiff learned that "the stuff that was planted on [him] by Harris wasn't even drugs." *Id.* at ¶¶ 28-29. Plaintiff then testified at an administrative hearing for Harris on or around August 18, 2010, at which point he was shown a laboratory report indicating that the substance was not drugs. According to Plaintiff, he realized that the lab report that could have exonerated him was hidden from him at his May 4, 2009 arraignment by the District Attorney. *Id.* at ¶¶ 30-31.

Plaintiff alleges that on September 14, 2010, he mailed a claim for damages against the City of Costa Mesa for false arrest, but that the City denied his claim on October 29, 2010. On October 7, 2010, Plaintiff filed a Petition and Order to Seal and Destroy Arrest Records, which was granted on October 7, 2010 based on a finding of innocence. *Id.* at ¶¶ 32-33.

Plaintiff filed his Complaint against Harris and the City on March 16, 2011, asserting causes of action for: (1) violation of 42 U.S.C. § 1983; (2) false imprisonment; (3) intentional infliction of emotional distress; (4) negligent infliction of emotional distress; (5) violation of civil rights under the Bane Act. The City brings this Motion to dismiss the second, third, fourth, and fifth claims.

II.     **Legal Standard**

Under Federal Rule of Civil Procedure 12(b)(6), a complaint must be dismissed when a plaintiff's allegations fail to state a claim upon which relief can be granted. Dismissal for failure to state a claim does not require the appearance, beyond a doubt, that the plaintiff can prove "no set of facts" in support of its claim that would entitle it to relief. *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1968 (2007) (abrogating *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99 (1957)). In order for a complaint to survive a 12(b)(6) motion, it must state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009). A claim for relief is facially plausible when the plaintiff pleads enough facts, taken as true, to allow a court to draw a reasonable inference that the defendant is liable for the alleged conduct. *Id.* at 1949. If the facts only allow a court to draw a reasonable inference that

the defendant is possibly liable, then the complaint must be dismissed. *Id.* Mere legal conclusions are not to be accepted as true and do not establish a plausible claim for relief. *Id.* at 1950. Determining whether a complaint states a plausible claim for relief will be a context-specific task requiring the court to draw on its judicial experience and common sense. *Id.*

In evaluating a 12(b)(6) motion, review is "limited to the contents of the complaint." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754 (9th Cir. 1994). However, exhibits attached to the complaint, as well as matters of public record, may be considered in determining whether dismissal was proper without converting the motion to one for summary judgment. *See Parks School of Business, Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995); *Mack v. South Bay Beer Distributors, Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986). Further, a court may consider documents "on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). "The Court may treat such a document as 'part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *Id*.

Dismissal without leave to amend is appropriate only when the Court is satisfied that the deficiencies in the complaint could not possibly be cured by amendment. *Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003) (citing *Chang v. Chen*, 80 F.3d 1293, 1296 (9th Cir. 1996)); *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

### III. Discussion

The City does not contest that Plaintiff has stated a claim as to his first cause of action, a violation of 42 U.S.C. § 1983. *See* Defendant's Reply Brief ("Reply"), 2. Instead, the City contends that Plaintiff's second, third, fourth, and fifth causes of action must be dismissed. The Court addresses each argument asserted by the City in turn.

#### A. Statutory Basis for Liability for Second, Third, and Fourth Claims

The City argues that the second, third, and fourth causes of action fail to allege a statutory basis for liability. The California Tort Claims Act provides that "[e]xcept as otherwise provided by statute . . . [a] public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person." Cal. Gov't Code § 815; *see also Searcy v. Hemet Unified School Dist.*, 177 Cal.App.3d 792 (1986).

Plaintiff does not dispute that the City of Costa Mesa is a public entity, yet he fails to allege grounds for statutory liability as to the second, third, and fourth claims. Plaintiff insists that his second, third, and fourth causes of action–for false imprisonment, intentional infliction of emotional distress, and negligent infliction of emotional distress–are grounded in the first cause of action asserted

under § 1983, which, of course, is a statute. Yet, even assuming Plaintiff's second, third, and fourth causes of action were incorporated under the § 1983 claim, Plaintiff could not succeed in those claims because–as currently alleged--they would seek to impose liability on City under a theory of *respondeat superior*. Under *Monell v. Dep't of Soc. Serv.*, "a municipality cannot be held liable solely because it employs a tortfeasor--or in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." 436 U.S. 658 (1978).

However, a municipality can be held liable under § 1983 for constitutional violations that, "implement[] or execute[] a policy statement, ordinance, regulation, or decision officially adopted or promulgated by that body's officers." *Id.* at 690. In other words, the City of Costa Mesa could be liable for acts arising from an "official policy or custom." *Id.* at 691; *see also Thompson v. City of Los Angeles*, 885 F.2d 1439, 1443 (9th Cir. 1989). The requirement that there be an "official policy" before a municipality is held liable for the acts of its employees exists to "make clear that municipal liability is limited to action for which the municipality is actually responsible." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986).

The pleadings for Plaintiff's second, third, and fourth claims allege that the City of Costa Mesa is liable only because its agent, the Costa Mesa Police Department, "employed" Harris. *See* Complaint, ¶¶ 46, 52, 58. Because this is a *respondeat superior* theory, Plaintiff must allege some sort of custom, policy, or practice that led to the conduct. *Monell*, at 691. Plaintiff has not done so, and has therefore failed to state a claim as to the City's liability under § 1983. As a result, there is no statutory basis alleged for the second, third, and fourth causes of action.

Accordingly, the second, third, and fourth causes of action are DISMISSED.

### B. Statute of Limitations

In his Bane Act claim, Plaintiff avers that Harris, a white male, interfered with his civil rights as a black male when "by intimidation and coercion" he planted false evidence on Plaintiff. Complaint, ¶ 62. Plaintiff further alleges that Harris was motivated by Plaintiff's status as a black male former drug user, which caused Harris to believe that his word would be more credible than Plaintiff's in court. *Id.* at ¶ 63.

The City insists that Plaintiff's fifth cause of action for state civil rights violations under the Bane Act is time-barred as a result of Plaintiff's failure to comply with the requirements of the California Tort Claims Act prior to filing suit.[1] As a threshold matter, the Court finds that the

---

[1] The City argued that all of the causes of action challenged in this Motion were time-barred, but because the Court already dismissed three of the four challenged claims,

California Tort Claims Act applies to Plaintiff's Bane Act claim, for which the only relief sought is damages.[2]  *See, e.g.*, *Williams v. City of Antioch*, 2010 WL 3632199, *5 (N.D. Cal. 2010) (noting that "the *sole* remedy Plaintiffs [sought] with their Bane Act claim [was] damages" and that, as a result, "Plaintiffs' Bane Act claim [was] subject to the claim presentation requirement of the Government Tort Claims Act"); *But see Devlyn v. Lassen Mun. Utility Dist.*, 737 F. Supp. 2d 1116 (E.D. Cal.) (finding that plaintiffs were not required to follow the presentment obligations of the California Tort Claims Act to bring their claims alleging violent threats under the Banes Act).

The California Tort Claims Act requires that a plaintiff present a claim to a public entity prior to filing suit against the public entity or its employees.  Such a claim must be presented within six months after the accrual of the cause of action for a cause of action for death or for injury to person or property. Cal. Gov't Code § 911.2(a).  Indeed, Plaintiff alleges that he mailed a claim to the City of Costa Mesa on September 14, 2010.  Complaint, ¶ 32.  That claim was deemed denied on October 29, 2010.  *Id.*  Thus, the remaining question becomes whether Plaintiff's claim was filed within six months of the accrual of the cause of action, and, accordingly, whether Plaintiff's Bane Act claim is time-barred.

Under what is known as the "discovery rule," a cause of action does not begin to accrue until the plaintiff either discovers or has reason to "suspect" a factual basis for its elements. *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797 (2005); *Norgart v. Upjohn Co.*, 21 Cal.4th 383 (1999). This means that a plaintiff need not know all the facts–indeed, one might not even know the identity of the wrongdoer–but must "have reason to at least suspect that a type of wrongdoing has injured them." *Fox*, 35 Cal. 4th at 806.  However, the related principle of "fraudulent concealment" applies when a defendant is responsible for preventing the plaintiff from instituting suit.  *Platt Elec. Supply, Inc. v. EOFF Elec. Inc.*, 522 F.3d 1049 (9th Cir. 2008); *Bernson v. Browning-Ferris Indus. of California, Inc.*, 7 Cal. 4th 926 (1994).[3]  The rule is premised on the idea that it would be unjust to allow a defendant to profit from wrongdoing.  *Id.* at 931; *Sanchez v. South Hoover Hospital*, 18 Cal. Ed 93, 100 (1976).  For a court to apply the fraudulent concealment rule, a complaint must articulate when the fraud was actually discovered; as well as the context of that discovery, and show that plaintiff was "not at fault for failing to discover it or had no actual or presumptive knowledge of facts sufficient to put him on inquiry." *Platt Elec.* Supply, 522 F.3d at 1055 (quoting *Baker v. Beech Aircraft Corp.*, 39 Cal.App.3d 315, 321 (1974)).

---

it only addresses the time-bar issue as it relates to the remaining, fifth cause of action.

[2] The City's reliance on *Gatto v. County of Sonoma*, 98 Cal. App. 4th 744 (2002) is misplaced, as that case did not involve the Bane Act.

[3] The fraudulent concealment rule applies whether or not an action is based on fraud. *Bernson*, 7 Cal. 4th at 931 n.3.

Defendant argues that Plaintiff's Bane Act claim accrued on March 21, 2009, the date of his arrest, because at that point Plaintiff was already aware of the fact that Harris had planted false evidence on him. Plaintiff, however, insists that the claim accrual began on August 18, 2010, the date on which he learned, after fianlly being provided with a laboratory report, that Harris had framed him with a substance that was not cocaine or any other drug. Indeed, it is true that Plaintiff alleges that as soon as Harris accused him of having cocaine, his "heart filled with dread" at the "realization" that Harris had "planted" something on the curb. Complaint, ¶ 15. Though Plaintiff may have therefore conceded that he had knowledge of his *innocence* as of March 21, 2009, he had no knowledge of the fact that the substance with which he was framed was not illegal. In other words, because he was deprived of access to the laboratory report that would have exonerated him, Plaintiff allegedly felt pressured into taking a plea deal. Complaint, ¶¶ 23-25. It is true that he may have known he was innocent, but because of Harris's and the City's conduct, he had no factual support–other than his word of mouth–to prove his innocence. Reading Plaintiff's Complaint in the light most favorable to him, *Marceau v. Blackfeet Housing Authority*, 540 F.3d 916, 919 (9th Cir. 2008), it is certainly plausible that Harris's fraud and the City's failure to disclose the lab report to Plaintiff, caused him not only to take a plea deal, but not to file a claim earlier.

Indeed, the City assumes that the entirety of the Bane Act claim involves being framed–of which, admittedly, Plaintiff claims knowledge as of March 2009. But the City ignores the remaining allegations of the Bane Act claim; that Harris "caused a full prosecution of [Plaintiff] to be effected, despite the fact that the substance planted on [him] was not cocaine." Complaint, ¶ 64. Of that fact, Plaintiff does not aver he was aware until August 18, 2010, the date on which he received notice of the laboratory results. Moreover, the fraudulent concealment rule lends further support to Plaintiff's argument that the August 18, 2010 date should be considered for accrual. After all, Plaintiff's Complaint clearly shows when and how he discovered the fraud that Harris perpetrated: he explains how he was approached by detectives who told him of the report's results. *See* Complaint, ¶¶ 28-32. The Complaint also shows that Plaintiff was not at fault for failing to know of this fraud, as Plaintiff alleges that the district attorney had hidden the report, *Id.* at ¶ 31., and thus he had no "actual or presumptive knowledge of facts to put him on inquiry" of the false evidence. *Platt Elec.* Supply, 522 F.3d at 1055 (quoting *Baker*, 39 Cal.App.3d at 321

Thus, reading the pleadings in the light most favorable to Plaintiff, and upon consideration of the fraudulent concealment rule, the Court does not find that Plaintiff's fifth cause of action is time-barred.

### IV. Disposition

For the reasons stated above, the Court hereby GRANTS IN PART AND DENIES IN PART the Motion. The City's request to dismiss the fifth cause of action is DENIED. The City's

request to dismiss the second, third, and fourth causes of action is GRANTED. Plaintiff shall have 20 days from the filing date of this Order to amend.

The Clerk shall serve this minute order on all parties to the action.